**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

CLARENCE BROWN,

      Petitioner,

v.                                     **No. 11-cv-0917 MV/SMV**

ERASMO BRAVO, and
ATTORNEY GENERAL OF THE
STATE OF NEW MEXICO,

      Respondents.

**<u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>**

THIS MATTER is before the Court on Petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody [Doc. 1] ("Petition") and Respondents' Answer to Petition for Writ of Habeas Corpus (28 U.S.C. § 2254) [Doc. 9] ("Answer"). The presiding district judge in this matter, the Honorable Martha Vázquez, has referred this matter to me for proposed findings and a recommended disposition. Order of Reference Relating to Bankruptcy Appeals, Social Security Appeals, Prisoner Cases, Non Prisoner Pro Se Cases, and Immigration Habeas Corpus Proceedings [Doc. 11]. Being fully advised,[1] I recommend that the entire Petition be dismissed with prejudice.

I.      **Factual and Procedural Background**

On November 6, 2007, Petitioner was convicted in the Seventh Judicial District Court of the State of New Mexico of Trafficking Methamphetamine by Manufacture, Conspiracy to

---

[1] Each of the issues in the Petition is susceptible to resolution based upon the materials already before the Court. Thus, an evidentiary hearing is unnecessary. *See Anderson v. Attorney Gen. of Kan.*, 425 F.3d 853, 858-59 (10th Cir. 2005) (noting that evidentiary hearing not required where record is sufficient to rule).

Traffic a Controlled Substance by Manufacture, and Possession of a Stolen Vehicle.  Judgment, Sentence, and Commitment [Doc. 9-1] ("Judgment") at 1.

Petitioner's conviction arose out of an arrest that occurred on May 11, 2006.[2] Memorandum Opinion [Doc. 9-2] at 35.  On that date, Deputy Erwin Young of the Torrance County Sheriff's office responded to the site of a possible structure fire.  *Id.*  Once he arrived on the scene, "Deputy Young noticed that there were a number of gallon-sized bottles of acetone and Heat, a carburetor cleaner[, and] a truck, partially covered with a tarp, that had numerous parts removed."  *Id.*  Deputy Young checked the vehicle's identification number and determined that the truck was stolen.  *Id.*

Following Deputy Young's request for backup, Sergeant Heath White arrived on the scene.  *Id.*  Upon his arrival, Sergeant White "kept smelling a strong odor of chemicals coming from the house that was consistent with meth labs that he had previously been involved with."  *Id.* (internal quotation marks, alteration, and brackets omitted).  In light of the odors and the danger from the combination of a recent fire and apparent presence of chemicals, "[t]he officers began to check the property for people . . . ."  *Id.* at 36.  The officers came upon one man hiding in a trailer and secured him.  *Id.*  "[T]he officers approached the residence on the property and heard someone inside walking."  *Id.*  That walking turned into running when Sergeant White knocked on the residence door.  *Id.*  After demanding that the individual(s) in the residence exit, Sergeant White found an unlocked entrance to the house.  *Id.*  The officers entered and

---

[2] The instant recitation of the facts leading to Petitioner's arrest is taken from the decision of the New Mexico Court of Appeals denying Petitioner's direct appeal.  *See* Memorandum Opinion [Doc. 9-2] at 34–51.  I utilize the opinion simply for background and will address the factual challenges in turn.

immediately encountered one of Petitioner's co-defendants who indicated that she "was there to clean the house [and] that she did not know" if anyone else was in the house.  *Id.*

While searching the house for additional occupants, the officers found a locked door that appeared to be the point from which strong chemical fumes were emanating.  *Id.* at 36–37.  The officers broke the lock off the door and entered the room.[3]  *Id.* at 37.  Sergeant White was initially "pushed . . . back from the bedroom" by the strength of the chemical odor in the room. *Id.*  Sergeant White then "checked the room[,] determined that no one was inside[, and] left the house because he was only in there for a protective sweep, which was to make sure there were no kids, no other adults, [and] no dangers to deputies on the outside."  *Id.* (internal quotations, alterations, and brackets omitted).

At that point, Sergeant White called for an officer who was a meth lab expert.  *Id.*  That officer, Chief Deputy Encinias, arrived on the scene, donned protective gear, and checked the house to confirm that no immediate fire or explosion was likely.  *Id.* at 37–38.  The officers then obtained a search warrant before conducting a fuller search of the property.  *Id.*  Although Petitioner was not at the house at the time of the incident, evidence and testimony connected him to the scene.  *Id.* at 38.  In light of the events and search, the officers arrested Petitioner and his co-defendants.  *Id.*

At trial, the State presented evidence connecting Petitioner to the meth lab.  *See id.* at 38−39.  First, the State showed that officers found assorted mail at the property bearing Petitioner's name.  *Id.*  Second, "the individuals found at the scene testified against [Petitioner]."

---

[3] Sergeant White indicated that this was necessary because of "the risk that there was someone in the room who could have shot at the deputies, destroyed evidence, or otherwise turned the scene into a deadly situation." Memorandum Opinion [Doc. 9-2] at 37.

*Id*. at 38. Specifically, witnesses testified to having seen Petitioner near the property. *Id.* at 38−39. Moreover, one co-defendant "stated that he got his meth from [Petitioner] and that he had gotten approximately half a gram from [Petitioner] on May 11." *Id.* at 39.[4] Based on this evidence, the jury convicted Petitioner of manufacturing methamphetamine, conspiracy to manufacture methamphetamine, and possession of a stolen vehicle. *Id.* at 40.

Petitioner was initially sentenced to a total of nine years' imprisonment for these counts. Judgment [Doc. 9-1] at 1–2. Subsequently, based on five previous felony convictions, the court found Petitioner to be a habitual offender. Amended Judgment, Sentence and Commitment [Doc. 9-1] at 4-6. On that basis, the court entered an amended judgment sentencing Petitioner to an additional eight years' imprisonment pursuant to a habitual offender enhancement. *Id.* at 6.

Petitioner timely noticed his appeal and, on March 4, 2008, filed his docketing statement with the New Mexico Court of Appeals. Notice of Appeal [Doc. 9-1] at 7; Docketing Statement [Doc. 9-1] at 8–17. The Court of Appeals initially placed Petitioner's direct appeal on its summary calendar, Notice[: ] Proposed Summary Disposition [Doc. 9-1] at 18–23, but later moved the appeal to its general calendar, Second Notice[: ] Assignment to the General Calendar [Doc. 9-1] at 46–47.

On June 8, 2010, the Court of Appeals denied Petitioner's direct appeal. Memorandum Opinion [Doc. 9-2] at 34–51. Petitioner sought a writ of certiorari from the New Mexico Supreme Court on June 21, 2010. Petition for Writ of Certiorari to the New Mexico Court of Appeals [Doc. 9-3] at 1–10. The New Mexico Supreme Court denied certiorari. Order [Doc. 9-3] at 29.

---

[4] At trial, Petitioner attempted to refute this testimony by presenting witnesses who saw him out of town in the days prior to the events at issue. *See* Memorandum Opinion [Doc. 9-2] at 39–40.

Thereafter, on August 19, 2011 Petitioner filed his first state habeas corpus petition. Petition for Writ of Habeas Corpus [Doc. 9-3] at 31–42.  The trial court summarily dismissed the petition on September 8, 2011.  Order of Summary Dismissal [Doc. 9-3] at 43.  Approximately one month later, Petitioner filed his petition with this Court.  Petition [Doc. 1].  On March 19, 2012, this matter was referred to me for proposed findings and a recommended disposition. Order of Reference Relating to Bankruptcy Appeals, Social Security Appeals, Prisoner Cases, Non Prisoner Pro Se Cases, and Immigration Habeas Corpus Proceedings [Doc. 11].

Following my initial review of the Petition and Respondents' Answer thereto, I recommended that this Court find that several of Petitioner's claims were unexhausted and, therefore, not ripe for review by this Court.  Proposed Findings and Recommended Disposition [Doc. 19] ("PF&RD").   Judge Vázquez adopted the PF&RD on August 15, 2012. Order Adopting [PF&RD] Directing Petitioner to Take Action Within 30 Days [Doc. 21] ("Order Adopting PF&RD"). Judge Vázquez put Petitioner on notice that his Petition could be dismissed if he did not withdraw his unexhausted claims within 30 days. *Id.*  Petitioner has withdrawn all unexhausted claims. Certificate to Withdraw Unexausted [sic.] Claims [Doc. 19] ("Certificate").

## II.    Section 2254 Standards

Under 28 U.S.C. § 2254, a petitioner in custody pursuant to a state court's judgment may seek a writ of habeas corpus where the state judgment was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d)(1)–(2).

*Decision Contrary to Federal Law*

In the context of § 2254(d)(1), a state court decision is "contrary to . . . clearly established Federal law" where a "state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law . . . ." *Williams v. Taylor*, 529 U.S. 362, 413 (2000) (O'Connor, J., concurring). In fact, a state court decision is not contrary to federal law "simply because the court did not cite [Supreme Court] opinions. . . . [A] state court need not even be aware of [Supreme Court] precedents, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (internal quotation marks omitted). Additionally, a decision is not contrary to precedent simply because the federal court holds a different view where Supreme Court precedent "is, at best, ambiguous." *Mitchell*, 540 U.S. at 17.

*Unreasonable Application of Federal Law*

Under § 2254(d)(1), a state court decision involves an "unreasonable application" of federal law if it "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. A writ of habeas corpus will not issue, however, "simply because [a federal court] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003) (internal quotations marks and citations omitted).

*Standard for Pro Se Litigants*

Where, as here, a petitioner is pro se, the "pro se litigant's pleadings are . . . construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Requiring liberal construction means that where a court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id.* When liberally construing claims, however, courts may not adopt the role of advocate. *Id.*

## III.    Analysis

Now that Petitioner has withdrawn his unexhausted claims, Certificate [Doc. 19], what remains of the Petition are five alleged bases that, effectively, amount to three different claims of entitlement to relief. *See generally* Petition [Doc. 1]. First, Petitioner asserts four points that are, essentially, claims that the prosecution did not meet its burdens in proving the case against him. *See id.* at 14 (alleging that evidence was insufficient to convict him and alleging case not proved beyond reasonable doubt). Second, Petitioner makes two claims that pertain to alleged unlawful search and seizure in violation of the Fourth Amendment. *See id.* (alleging improper denial of motion to suppress and alleging that conviction was based on unconstitutional search and seizure). Third, Petitioner contends that his conviction resulted from cumulative error.[5] *Id.* at 7; *see also id.* at 24–39. Each claim fails on its merits.

---

[5] Technically, Petitioner lists two issues within the cumulative error point; however, because both claims are sufficiency related, they are addressed in the sufficiency section of these recommendations.

_Sufficiency of the Evidence_

Petitioner offers four separate claims of insufficiency of the evidence that he believes entitle him to relief under § 2254.  Specifically, in Claim Two, Petitioner's cumulative error allegations include his argument that the jury impermissibly reached a verdict using the testimony of Petitioner's co-conspirators because they had plea deals[6] and he offered testimony that contradicted their testimony.  _Id._ at 38–39.  Second, Claim Two also includes the cursory statement that there was "insufficient evidence to convict."  _Id._ at 7.  The two additional insufficiency claims are similarly conclusory statements that the trial court improperly "denied a motion for a directed verdict due to the sufficiency of the evidence" and that the state "failed to provide proof beyond a reasonable doubt."  _Id._ at 14.  All of these claims are meritless.

"Sufficiency of the evidence is a mixed question of law and fact[, and thus, courts ask] whether the facts are correct and whether the law was properly applied to the facts . . . ."  _Maynard v. Boone_, 468 F.3d 665, 673 (10th Cir. 2006).  As a result, courts must look to both 28 U.S.C. § 2254(d)(1) and (d)(2) on such claims.  _Id._  Thus, insofar as Petitioner challenges the factual bases of the conviction, the Court may only grant relief where the "decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  This standard does not require the state court

---

[6] Although Petitioner characterizes this claim as one regarding improper admission of hearsay, _see_ Petition [Doc. 1] at 7, nothing in the record or Petitioner's arguments indicates that there was actually hearsay testimony.  "'Hearsay' is a statement, other than one made by the declarant while testifying . . . , offered in evidence to prove the truth of the matter asserted."  Rule 11-801(C) NMRA; _see also_ Fed. R. Evid. 801(c).  Rather than a hearsay objection, it appears that Petitioner believes that it was wrong to allow a jury to consider what he believes to be controverted testimony and, therefore, that there was no evidence to convict him.  _See_ Petition [Doc. 1] at 35–38 (discussing alleged contradictions and plea deals).  As such, I have analyzed the apparent challenge of reliability and sufficiency instead.  To the extent that hearsay is actually the issue Petitioner intends to assert, I still recommend denial because Petitioner neither cites a factual example of improper admission of an out-of-court statement offered for the truth of the matter asserted nor asserts any legal error in hearsay rule application.

to be flawless in discerning the facts, but rather asks simply if the decision was *based upon* an unreasonable factual determination. *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011).

To the extent that Petitioner challenges the legal foundation of the state court's decision, the question is whether there was an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). A state-court decision need not cite to federal law in order to be acceptable under § 2254(d)(1). *Mitchell*, 540 U.S. at 16.

In three of Petitioner's claims of insufficiency of the evidence, he neither refers to the state court's treatment of the facts nor references the accuracy, or lack thereof, of the law cited by the state courts. Petition [Doc. 1] at 7, 14. Given the burden that Petitioner faces and the deference this Court owes to the state court on issues it has already addressed, Petitioner cannot be said to assert entitlement to relief on any of those three bases.

Moreover, the state court applied law no different from the law that the federal courts would apply. The state court, in relevant part, set forth the following standards for reviewing Petitioner's insufficiency claims:

> The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction. When applying this standard, [this court] review[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict. [The court] does not substitute [its own] judgment for that of the jury or reweigh the evidence because the jury is free to reject the defendant's version of the facts."

Memorandum Opinion [Doc. 9-2] at 45 (internal quotation marks, brackets, and citations omitted). This description of the law is functionally identical to the federal standards for insufficiency challenges that this Court must apply: "[A] federal habeas corpus court, in

assessing the sufficiency of the evidence to support a state-court conviction, inquires whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Pilon v. Bordenkircher*, 444 U.S. 1, 2 (1979) (per curiam) (internal quotation marks omitted).

Petitioner has offered no exhausted, factual challenge to the state court's factual findings. Likewise, Petitioner offers no analysis in support of the first three bases to undermine the legal analysis conducted by the state courts—analysis that I agree with in its entirety. Thus, I recommend that the Court find that the state court properly addressed the sufficiency of the evidence and that the first three claims of insufficiency be denied with prejudice.

Next, Petitioner contends that his conviction was improper because the testimony of his co-conspirators was admitted even though his co-conspirators were given plea deals. Petition [Doc. 1] at 37–39. This claim is, once again, tantamount to a claim of insufficiency of the evidence. Essentially, Petitioner appears to assert that because his witnesses offered a version of the facts contrary to the version offered by co-conspirators, and because the co-conspirators testified pursuant to plea agreements, he could not be convicted. As with the foregoing sufficiency claims, Petitioner falls far short of establishing a violation of his Constitutional rights based on insufficiency of the evidence.

As the New Mexico Court of Appeals noted in rejecting Petitioner's claims pertaining to his co-conspirators, Petitioner was "essentially asking th[e] Court to reweigh the evidence and conclude that the testimony [Petitioner] presented was more credible than the testimony presented by the State." Memorandum Opinion [Doc. 9-2] at 46. The New Mexico Court of Appeals correctly, and therefore not unreasonably or in a manner contrary to federal law, held

that it does "not reweigh the evidence on appeal" and rejected these claims.  *Id.*; *accord United States v. Bowen*, 527 F.3d 1065, 1076 (10th Cir. 2008) ("Accordingly, we may reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (internal quotation marks omitted)).   If the plea deals offered to testifying co-conspirators undermined the reliability of their testimony, it was for the jury to so decide and not this Court.  Because the state court did not err—let alone do so to a degree justifying § 2254 relief—I recommend that this claim be denied as well.

In light of the foregoing, I recommend finding that the New Mexico courts properly analyzed the question of sufficiency of the evidence and, therefore, did not reach a decision that entitles Petitioner to § 2254 relief.[7]  Thus, I recommend that each of Petitioner's allegations relating to claims that his conviction was unsupported by sufficient evidence be denied with prejudice.

### Fourth Amendment Claims

Next, Petitioner raises a pair of claims centered on the alleged impropriety of the search and seizure of the property at the heart of the criminal charges.  Specifically, Petitioner contends that his petition should be granted because the trial court improperly denied a motion in limine to suppress physical evidence and because his conviction was "obtained pursuant to an

---

[7] In addition to offering no reason to reject the correct analysis of the New Mexico courts, Petitioner's first three claims of insufficiency are, themselves, insufficient to assert a basis for relief.  Petitioner simply states his claims and provides no clearly connected facts or reasoning in support of them.  To the extent that Petitioner desires for the Court to sift through the past proceedings to establish claims for him, the Court may do no such thing.  *See Hall*, 935 F.2d at 1110 (noting that district court may not adopt the role of a petitioner's advocate).  Thus, in the alternative, I would recommend denial of Petitioner's sufficiency claims based upon failure to offer facts or law in support of the same.

unconstitutional search [and] seizure."[8]   Petition [Doc. 1] at 14.   Respondents contend that Fourth Amendment claims cannot serve as a basis for habeas corpus relief.   Answer [Doc. 9] at 12–13.   Respondents are correct.

A state prisoner may not seek habeas corpus relief based upon alleged violations of the Fourth Amendment's proscriptions against illicit searches and seizures.   *Matthews v. Workman*, 577 F.3d 1175, 1194 (10th Cir. 2009) (citing *Stone v. Powell*, 428 U.S. 465, 494 (1976)).   Such claims may only be reviewed under § 2254 if the State failed to afford a Petitioner "an opportunity for full and fair litigation of Fourth Amendment claims."   *Id.* (internal quotation marks omitted).

Petitioner has not alleged, nor even implied, that he did not receive a full and fair opportunity to challenge the validity of the search and seizure in this matter.   Nor, it seems, could he make such a claim.   Petitioner's trial counsel moved for a suppression order from the trial court.   *See* Memorandum Opinion [Doc. 9-2] at 40 (noting that Petitioner was appealing denial of suppression motion).   Likewise, Petitioner's appellate counsel argued, and the trial court fully considered and rejected, that a Fourth Amendment violation occurred.   *See id.* at 40−45.

Because Fourth Amendment suppression issues may not be addressed in a habeas petition where the Petitioner had a full and fair opportunity to raise the claim in state court, this Court is not authorized to consider the various permutations of a Fourth Amendment challenge raised by Petitioner.   Thus, I recommend that each of Petitioner's claims pertaining to the Fourth Amendment be dismissed.

---

[8] As with Petitioner's claims about sufficiency of the evidence, Petitioner does not specifically include support for these assertions.  On that fact alone, the Court could summarily deny these claims for lack of factual support.

*Cumulative Error Claim*

Finally, Petitioner includes a claim based on cumulative error. Petition [Doc. 1] at 7, 35−39. Specifically, Petitioner seems to be claiming that the aforementioned sufficiency issues, combined with two of the issues the Court previously held to be unexhausted, PF&RD [Doc. 19] at 2–3, Order Adopting PF&RD [Doc. 21], combined to cause cumulative error. *See* Petition [Doc. 1] at 7. "Cumulative-error analysis applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors." *Castro v. Ward*, 138 F.3d 810, 832 (10th Cir. 1998) (internal quotation marks omitted). Because each of Petitioner's alleged errors is baseless, I recommend that the Court deny Petitioner's claim based on cumulative error.

## IV.    Conclusion

Rather than reaching decisions that were unreasonable or contrary to well-established federal law, I find that the New Mexico courts properly determined each of Petitioner's remaining claims for relief. As such, I recommend that Petitioner's Petition be denied and this matter be dismissed with prejudice.

Wherefore, **IT IS HEREBY RECOMMENDED** that Petitioner's Petition [Doc. 1] be **DENIED** and that this matter be **DISMISSED with prejudice**.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

**STEPHAN M. VIDMAR**
**United States Magistrate Judge**